HODGES *v.* VALLEY CITY DESK CO.

COMPROMISE AND SETTLEMENT — ESTOPPEL — EQUITABLE ESTOPPEL —SETTLEMENT OF CLAIM—EFFECT.

> Plaintiff, claiming that salary was due him as president of defendant and superintendent of its factory, drew checks on defendant's bank account on which he obtained the money but which defendant, through its proper officer, instructed the bank not to charge to its account. Subsequently he sold his stock in the company to defendant for a stipulated sum on which he agreed to accept the amount of the checks as part payment. After full payment for his stock had been made he made a claim for the salary represented by the checks. *Held,* that he was estopped to claim that the matter of his salary was not settled at the time of the sale of his stock.

Error to Kent; Perkins, J. Submitted February 15, 1907. (Docket No. 145.) Decided October 4, 1907.

Assumpsit by John A. Hodges against the Valley City Desk Company for services rendered. There was judgment for plaintiff, and defendant brings error. Reversed, and judgment entered for defendant.

*L. E. Carroll,* for appellant.

*Hugh E. Wilson* (*Richard L. Newnham,* of counsel), for appellee.

McALVAY, C. J. Plaintiff recovered a judgment against defendant company for 20 weeks' salary as superintendent of its factory. The case was tried before the court without a jury and the judge upon request in writing filed his findings of fact and conclusions of law, upon which judgment was entered for $998.33. The findings of fact and law made by the court are as follows:

"1. The defendant company was incorporated in 1888, and the plaintiff was at that time elected president of the company, and was such officer continuously from that time until April 1st, 1901.

"2. In April, 1891, at a meeting of the directors of the company, George Corbin, one of the directors, moved that the plaintiff be appointed general superintendent of the factory, with power to hire and discharge all employés, and the motion was unanimously carried. That immediately after such appointment the plaintiff entered upon and performed the duties of superintendent, and continued to perform such duties until April 1st, 1901.

"3. The plaintiff's appointment as superintendent by the board of directors was never revoked prior to April 1st, 1901, but continued in force until that date.

"4. That several years prior to April 1st, 1901, the salary of the plaintiff was agreed upon between him and the company and fixed at the sum of forty dollars ($40.00) per week, and he received a salary of forty dollars ($40.-00) per week from the time of that agreement up to and including the week ending November 10th, 1900. That the salary of the plaintiff was the same salary received by Alonzo N. Hodges, who was the secretary and treasurer of the company during all the time that the plaintiff was president and general superintendent.

"5. That on November 17th, 1900, and on November 24th, 1900, the bookkeeper, one Buell, put up in envelopes the salary of the plaintiff for the weeks ending November 17th and 24th, in the customary manner, but that the same was not paid over to the plaintiff, and that some time between November 24th and December 1st, 1900, Alonzo N. Hodges informed said Buell that he was to discontinue the payment of salary to the plaintiff.

"6. That the plaintiff after November 10th, 1900, continued in the employ of said company as general superintendent until April 1st, 1901, a period of twenty (20) weeks.

"7. That from November 10th, 1900, to April 1st, 1901, a period of twenty (20) weeks, the plaintiff received no salary from the defendant.

"8. I find as a matter of law that the plaintiff is entitled to recover from the defendant the sum of forty dollars ($40.00) per week for twenty (20) weeks, together with five (5) per cent. interest thereon, from April 1st,

1901, to date, which I find to be the sum of nine hundred ninety-eight and 33–100 dollars ($998.33).

"Dated March 19th, 1906.

"WILLIS B. PERKINS,
"Circuit Judge."

Amendments to these findings were offered and denied and exceptions taken. Several errors are assigned, only two of which are urged in defendant's brief:

1. That plaintiff was estopped by his conduct from maintaining his suit.

2. That the court erred in finding that plaintiff after his appointment as superintendent continued to perform those duties until April 1, 1901.

The plaintiff and others had conducted this business as a copartnership up to the time of its incorporation in 1888. He was then elected president and in May, 1890, was elected superintendent. He claims that he held both of these positions until he sold his stock in April, 1901. Some time after the incorporation plaintiff and his nephew and the nephew's wife acquired all the stock of defendant company. They were all actively engaged in the business and entered into an agreement in writing that as long as they held the stock plaintiff should continue to be elected as president and director each year, and plaintiff was to receive the same salary as the nephew, Lon. N. Hodges, who was secretary and treasurer, such salary to be not less than $1,500 per year, and he was to give his time to the services of the company. The salaries were finally increased to $40 per week to each, and were never afterwards changed.

The basis of the claimed estoppel rests upon the acts and conduct of plaintiff at the time he sold out his stock on or about April 1, 1901. Some dispute had arisen because Lon. N. Hodges on November 10, 1900, ordered the salary of plaintiff stopped, and plaintiff, being refused further salary, finally, on March 14th and 16th, drew two checks, amounting to $450, signed by him as president, and drew the money to apply on his salary. Lon. N. Hodges, who

had always drawn the checks, claiming that the payment of these checks was unauthorized, informed the bank not to charge them on defendant's account. Arrangements were made whereby others took an interest in the corporation, and plaintiff, having been deposed as president, contracted to sell his stock to the company for.$5,000. At the time of the transfer the matter of these checks was discussed. The amount of the checks was finally included in the transaction. The testimony conclusively shows that defendant understood, and plaintiff intended it should understand, that the purchase of his stock for $5,000 by defendant settled any claim on his part for back salary. It is undisputed that defendant insisted throughout that plaintiff was not entitled to any salary after November 10, 1900, and refused to pay him. It is undisputed that plaintiff claimed that he was entitled to salary up to the time of his removal as president. It is undisputed that plaintiff sought to pay himself a portion of his back salary in March, 1901, by means of two checks signed by him as president, upon which he collected $450, which he applied upon his alleged salary account. It is undisputed that defendant refused to recognize the checks and notified the bank not to charge them to defendant's account. It is undisputed that plaintiff, although at the time he sold his stock claiming he was entitled to salary, surrendered his claim to retain the amount of back salary represented by the checks and accepted the obligation of defendant upon the checks as part of the consideration for the purchase of his stock.

Plaintiff testified:

"At the time I sold my stock I made the claim that they owed me on salary. * * * These checks were connected with the purchase of the stock by them from me. I suppose they were part of the payment for the stock; that is the way the company construed it I suppose; I did not construe it in that way; there was a controversy over the checks at the time and Mr. Van Hoff who paid me the money on the checks, and was quite liable to lose his position at the bank; there was a great deal of feeling in

the matter, and the checks were objected to, and under
these considerations and through the influence of Mr.
Graham, who was then vice-president of our company, I
allowed them to take that amount out of the purchase
price for the stock.   *   *   *   I received for the stock
$1,000.00 in cash, eight notes for $400 each and one note
for $350.00, making a total of $4,550.   The consideration
stated in this agreement as $5,000 is not correct.   The
consideration was $4,550.   *   *   *   I never gave any
receipt, acknowledgment or waiver to the company of
my claim for unpaid salary.   The reason that I drew
these checks was because I was advised by my attorney
to get what money I had coming, if I could get it, in any
way or manner; that I was entitled to it.   The purchase
price of my stock at $5,000 which was bought by the
company was made up of these checks of $450, $1,000 in
cash, eight notes for $400 each and one note for $350.   *
*   *   My attorney told me that I was perfectly entitled
to the money for my salary and would be entitled to get
it in any way I could; that is, the money I had coming or
claimed I had coming.   I had asked for my salary at the
office, and they had refused to pay it.   *   *   *   I
thought I had perfect authority to draw it, I had never
drawn or signed any checks before for the company.   I
won't say that these were the only checks that I ever
signed for the company.   I know I signed a great many
notes.   I did not consider that I had no authority to sign
checks as president of the company.   I supposed I had, I
was so advised.

"*Q.* Don't you know that according to the by-laws and
according to the custom and practice, and the order of the
bank, that Lon. N. Hodges was the only one who drew
any checks.

"*A.* No, sir.   I have signed a great many notes and
contracts for the company, or rather indorsed the notes.
*   *   *   I drew those checks for the purpose of getting
my salary, to get the money, I needed it; I had been to
the company and demanded my pay, it was on the in-
structions of my attorney that I did.   I don't know
when I first made a claim to the company for my salary.
*   *   *

"*Q.* If you knew that you had something coming to
you, why didn't you insist upon retaining that $450.00 at
that time instead of allowing it to go in payment for your
stock ?

"*A.* Through the influence of Mr. Graham and Mr. Van Hoff, and my attorney rather thought it would be all right to do that and try and collect it later."

Plaintiff received $450 of defendant's money on the checks, $1,000 in cash and notes aggregating $3,550, making $5,000 which he actually received for his stock. The $450 represented salary and nothing else. Plaintiff agreed to accept the money which he had collected on his alleged salary account—and which he was entitled to keep, if he was entitled to salary—as a part payment for his stock, with an undisclosed intention to try to collect salary afterwards. The surrender of part of his salary, in accordance with defendant's contention that he was not entitled to salary, is inconsistent with his present claim, was acted upon by defendant, and he should be held to be estopped from now asserting the claim. Plaintiff received payment of the last note in January, 1902, and in May, 1902, he sent defendant a bill for his salary. For the reasons above indicated the court was in error in not finding that plaintiff was by his conduct estopped from recovering in this suit.

The judgment is reversed and a judgment will be entered in favor of defendant and against plaintiff, with costs of both courts.

CARPENTER, GRANT, BLAIR, and MONTGOMERY, JJ., concurred.